486 A.2d 431

**COMMONWEALTH of Pennsylvania**

v.

**Joseph H. JACKSON, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 6, 1984.

Filed Dec. 14, 1984.

Petition for Allowance of Appeal Denied April 17, 1985.

610

612

Norman L. Goldberg, Media, for appellant.

Francis J. Capaldo, Assistant District Attorney, West Chester, for Commonwealth, appellee.

Before CIRILLO, OLSZEWSKI and MONTGOMERY, JJ.

CIRILLO, Judge:

This is an appeal by appellant Joseph H. Jackson, from the judgment of sentence entered by the Court of Common Pleas of Chester County. Following a trial by jury, appellant was convicted of murder in the first-degree, robbery, possession of an instrument of crime, and possession of prohibited offensive weapons. Post-trial motions were denied, and appellant was sentenced to life imprisonment on the charge of murder, not less than five nor more than ten years imprisonment to begin at the expiration of the life sentence for the charge of robbery, and to pay the costs of prosecution on the remaining charges.

On direct appeal, appellant raised the following issues as grounds for granting a new trial: 1) refusal of the trial court to grant a request for change of venue; 2) the lack of an impartial jury through exclusion of a select class of persons; 3) the trial court's exclusion of psychiatric testimony to negate the element of specific intent; 4) a denial of effective assistance of counsel; 5) a ruling on a matter of cross-examination; 6) the hearing court's refusal to stay proceedings so that appellant could call witnesses at the preliminary hearing; 7) a denial of a demurrer to the charge of possessing prohibited weapons; 8) insufficiency of the evidence to support a conviction of first-degree murder; 9) erroneous sentencing procedures. Pursuant to an order of this Court, the case was remanded to the trial court for an evidentiary hearing on the issue of incompetency of counsel, an issue raised for the first time on appeal. *Commonwealth v. Jackson*, 267 Pa.Super. 63, 64–65, 405 A.2d 1304, 1305 (1979). Following the trial court's determination that appellant was not denied effective assistance of counsel, a supplemental appeal was filed and argued before this panel

on September 6, 1984. We affirm in part and reverse in part.

The case at bar involves a long and complicated factual and procedural history. Accordingly, a detailed account of the events preceding this appeal is necessary.

## I.

On December 14, 1974, the body of Eric Waltz was found on the floor of his place of employment; the cause of death was a gunshot wound to the head. Appellant and Daniel Brisbon were subsequently arrested and charged with the murder as well as robbery, theft, possession of an instrument of crime, possession of prohibited offensive weapons, and theft by unlawful taking.

On February 7, 1975, appellant waived extradition from the State of Delaware, and was returned to Chester County. A preliminary hearing was held, and at the conclusion of the Commonwealth's testimony, trial counsel for appellant requested a continuance of the hearing in order to subpoena witnesses. This motion was denied.

Subsequent pre-trial motions were filed and denied. Among these was a motion for a change of venue. At the hearing on this motion, a representative selection of news articles was presented to the court. The hearing judge concluded that the news accounts could fairly be "characterized as pretrial publicity lacking in inflammatory content." The motion was accordingly denied.

On June 19, 1975, Daniel Brisbon was tried before a jury and acquitted. Selection of a jury for appellant's trial began on July 7, 1975. After the voir-dire examination began, trial counsel moved for a dismissal of the jury panel, alleging that since appellant was black, and the panel in the courtroom contained only two members of the black race, the jury selection process was tainted. The court denied the motion.

Appellant's trial began on July 9, 1975. The following day, the court sustained demurrers to several charges, but

denied demurrers to the rest. Several witnesses were called to testify at trial, among them Daniel Brisbon. He testified that appellant fired the fatal shot. Appellant took the stand on his own behalf and testified that Brisbon had done the killing, and appellant raised his possible indulgence in alcohol on the date of the incident. Trial counsel then made an offer of proof to present psychiatric testimony to negate the element of specific intent required for conviction of first-degree murder, theft, and robbery. The offer was refused by the court.

The jury returned a verdict of guilty on all charges and a verdict finding aggravating circumstances. Motions for a new trial and in arrest of judgment were denied by the court *en banc.* On August 23, 1977 judgment of sentenced was entered.

## II.

Appellant, represented by new counsel, appealed, raising ineffective assistance of his trial counsel. However, as we noted earlier, in 1979, the case was remanded for evidentiary hearings on this issue. *Commonwealth v. Jackson, supra.* Hearings were held before the Honorable Leonard Sugerman, who found no merit to any of appellant's claims of ineffectiveness. After carefully reviewing Judge Sugerman's thorough and well-reasoned opinion, we conclude that the trial court adequately addressed the ineffectiveness claims.

We address appellant's remaining claims seriatim.

## III.

Appellant argues that he was denied the right to be tried by an impartial jury when his request for a change of venue was denied. Specifically, he claims that the nature of the pre-trial publicity surrounding this case was so inherently prejudicial that virtually every prospective juror in the county was exposed to it.

"Whether to grant a change of venue is a matter committed to the sound discretion of the trial court, and its discretion will not be disturbed absent an abuse of that discretion." *Commonwealth v. Hamm*, 325 Pa.Super. 401, 418, 473 A.2d 128, 137 (1984) (allocatur denied). *Accord Commonwealth v. Roberts*, 496 Pa. 428, 437 A.2d 948 (1981); *Commonwealth v. Daugherty*, 493 Pa. 273, 426 A.2d 104 (1981); *Commonwealth v. Keeler*, 302 Pa.Super. 324, 448 A.2d 1064 (1982). In *Commonwealth v. Casper*, 481 Pa. 143, 392 A.2d 287 (1978), the Supreme Court set out the analysis to be employed in reviewing a trial court's denial of a request for a change of venue:

In reviewing the trial court's decision, the only legitimate inquiry is whether any juror formed a fixed opinion of [the defendant's] guilt or innocence as a result of the pre-trial publicity." *Commonwealth v. Kichline, supra*, 468 Pa. at 274, 361 A.2d at 287. Normally, one who claims that he has been denied a fair trial because of prejudicial pre-trial publicity must show actual prejudice in the empaneling of the jury. *See Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *Commonwealth v. Rolison*, [473 Pa. 261, 374 A.2d 509 (1977)]; *Commonwealth v. Hoss*, 469 Pa. 195, 201, 364 A.2d 1335 (1976); *Commonwealth v. Pierce*, 451 Pa. 190, 195, 303 A.2d 209, *cert denied*, 414 U.S. 878, 94 S.Ct. 164, 38 L.Ed.2d 124 (1973). But this rule is subject to an important exception. In certain cases there "can be pre-trial publicity so sustained, so pervasive, so inflammatory, and so inculpatory as to demand a change of venue without putting the defendant to any burden of establishing a nexus between the publicity and actual jury prejudice," *Commonwealth v. Frazier*, 471 Pa. 121, 127, 369 A.2d 1224, 1227 (1977), because the circumstances make it apparent that there is a substantial likelihood that a fair trial cannot be had....

....

It is clear that the mere existence of pre-trial publicity does not warrant a presumption of prejudice. Similarly, a

possibility that prospective jurors will have formed an opinion based on news accounts will not suffice.

*Id.* 481 Pa. at 150–52, 392 A.2d at 291–92. *See also Commonwealth v. Arnold,* 331 Pa.Super. 345, 480 A.2d 1066 (1984). Moreover,

> even if there has been extensive pre-trial publicity, a fair trial is not necessarily precluded. Instead, once the fact of pre-trial publicity is determined, the inquiry then turns to the nature of the publicity and its effect on the community. Factors to be considered in determining the nature of the publicity include the following:
>
>> whether the pre-trial publicity was, on the one hand, factual and objective, or, on the other hand, consisted of sensational, inflammatory and "slanted articles demanding conviction" ...; whether the pre-trial publicity revealed the existence of the accused's prior criminal record; whether it referred to confessions, admissions or reenactments of the crime by the defendant; and whether such information is the product of reports by the police and prosecutorial officers.

*Commonwealth v. Romeri,* 504 Pa. 124, 470 A.2d 498, 502 (1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1922, 80 L.Ed.2d 469 (1984), *quoting Commonwealth v. Casper, supra,* 481 Pa. at 152–53, 392 A.2d at 292. "The critical factor ... is the recent and pervasive presence of 'inherently prejudical' publicity, the likely effect of which is to render a fair trial impossible." *Casper, supra,* 481 Pa. at 154, 392 A.2d at 293.

■ In light of the *Casper* analysis, we find no merit to appellant's contention. At the change of venue hearing, trial counsel indicated he was relying upon the inherently prejudicial nature of the publicity; in support of the motion, evidence consisting of newspaper clippings was presented to the court. No other evidence was offered. The hearing court found that:

> Most of the articles appeared shortly after the body of the victim was found at the gasoline station. The early articles involved accounts of the search for possible wit-

nesses. It is apparent throughout the articles that police or law enforcement agents did not release the contents of statements or confessions given by defendant. As a matter of fact, in the investigatory stages the Chief of Police of the township was quoted in one of the news articles as refusing to give any details since "we are guarding our statements to the press so prospective jurors that will be drawn for this case will not be tainted."

. . . .

There was no indication that the jury empaneled was less than fair and impartial and certainly no showing of prejudice as a result of the publicity. The record made at the voir dire shows that thirty-nine jurors out of seventy-one questioned had some knowledge of the case gained through the news media. Of those selected, seven never heard or read anything about the case, with one indicating a slight knowledge of it. The others were carefully questioned as to whether they had any fixed opinions. All of these indicated no such opinions.

Under these circumstances the Court properly denied the application for a change of venue, particularly since we find the articles not inherently prejudicial...

We can see no abuse of discretion in the trial court's decision when viewed in light of *Casper*.

## IV.

Appellant next contends that the procedures utilized for the selection of the jury panel were in violation of his right to be tried by a fair and impartial jury. When trial counsel moved for the dismissal of the panel, several prospective jurors had already been questioned. Apparently the motion was based upon counsel's observations that the panel contained only two members of the black race.

■ Such an objection was not timely under Rule 1104(b) of the Pennsylvania Rules of Criminal Procedure. Rule 1104(b) provides:

(b) Unless opportunity did not exist prior thereto, a challenge to the array shall be made not later than five days before the first day of the week the case is listed for trial of criminal cases for which the jurors have been summoned and not thereafter, and shall be in writing, specifying the facts constituting the ground for the challenge.

By failing to timely challenge the jury array, appellant has waived any objection he may have had. *See Commonwealth v. Adams,* 476 Pa. 91, 381 A.2d 882 (1977); *Commonwealth v. Butler,* 448 Pa. 128, 291 A.2d 89 (1972); *Commonwealth v. Davis,* 267 Pa.Super. 370, 406 A.2d 1087 (1979); *Commonwealth v. McIntosh,* 266 Pa.Super. 425, 405 A.2d 507 (1979) (concurring opinion by Judge Hoffman).

 Assuming arguendo that a timely objection was made to the array, appellant failed to show any systematic exclusion of a class of persons as required for dismissal of a jury panel. *Commonwealth v. Jones,* 465 Pa. 473, 350 A.2d 862 (1976).

## V.

Appellant also argues that the trial court erred in sustaining the Commonwealth's objection to an offer of proof to present psychiatric testimony. Allegedly, this testimony would have negated the element of specific intent required for a conviction of the crimes of first-degree murder, theft, and robbery.

 It is clear that the admission or exclusion of evidence is a matter committed to the sound discretion of the trial court. *Commonwealth v. Miller,* 303 Pa.Super. 504, 450 A.2d 40 (1982); *Commonwealth v. Krajci,* 283 Pa.Super. 488, 424 A.2d 914 (1981). On appeal, we will not disturb a court's ruling unless it amounts to an abuse of discretion. *Commonwealth v. Miller, supra; Commonwealth v. Krajci, supra.* Moreover, it is basic hornbook law that only relevant competent evidence is admissible at trial. "Evidence is relevant if it tends to prove or disprove *the matters in controversy.*" *Commonwealth v. Simp-*

*son,* 316 Pa.Super. 115, 120, 462 A.2d 821, 823 (1983) (emphasis added); *accord Commonwealth v. Doe,* 316 Pa.Super. 1, 6, 462 A.2d 762, 765 (1983) (evidence which tends to establish facts material to a criminal prosecution or which tends to make a fact at issue more or less possible, is relevant.); *Commonwealth v. Sinwell,* 311 Pa.Super. 419, 423, 457 A.2d 957, 959 (1983) (evidence is relevant when it tends to establish facts in issue.)

We fail to see how appellant's proffered evidence would have in any way advanced the inquiry into matters in issue. When the evidence was offered, there was nothing to show the trial court that appellant was intoxicated at the time in question.[1] Appellant testified that he had been drinking on the night of the murder but only in the following terms: "Not a lot—But a good considerable amount." This cannot be construed as evidence of "intoxication". *Commonwealth v. Davenport,* 494 Pa. 532, 534, 431 A.2d 982, 983 (1981). Further, the trial court stated that:

> Defendant's testimony about the events of the early morning in question belie the fact that he was intoxicated or even under the influence of alcohol. As a matter of fact, he testified that it was his partner who was "drunk" and that he even had to help him out of the car. His answers to the questions put to him on both direct and cross-examination tend to show a state of sobriety rather than intoxication.

Appellant's reliance on *Commonwealth v. McCusker,* 448 Pa. 382, 292 A.2d 286 (1972), and its progeny is misplaced. In *McCusker,* the Supreme Court allowed an accused charged with murder to offer psychiatric testimony to show he acted in the heat of passion. Subsequent cases permit-

1. In *Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976), the Supreme Court was faced with a similar situation:
 Appellant's psychiatrist would have testified that, because of appellant's alcoholism, he could not have formed that intent if he had been intoxicated. Thus, if appellant had presented evidence that he had been intoxicated at the time of the homicide, the psychiatric testimony may have been admissible because it may have been relevant in determining appellant's actual state of mind.
 *Id.,* 468 Pa. at 284–85, 361 A.2d at 292.

ted psychiatric testimony to show diminished capacity. *See, e.g.; Commonwealth v. Walzack,* 468 Pa. 210, 360 A.2d 914 (1976). The determinative factor in *McCusker, Walzack,* and the cases that followed, was that the defendant *conceded general criminal liability;* therefore, the only issue to be resolved by the trier of fact was that of the defendant's mental state at the time of the charged crime. *See, e.g., Commonwealth v. Graves,* 461 Pa. 118, 334 A.2d 661 (1975); *Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976); *Commonwealth v. Weinstein,* 499 Pa. 106, 451 A.2d 1344 (1982); *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327, *reh'g. denied* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). The Supreme Court has specifically stated that:

> An accused offering evidence under the theory of diminished capacity *concedes general criminal liability.* The thrust of this doctrine is to challenge the capacity of the actor to possess a particular state of mind required by the legislature for the commission of a certain degree of the crime charged.

*Commonwealth v. Walzack, supra,* 468 Pa. at 220–21, 360 A.2d at 919–20. (Emphasis in original).

 In the case at bar, appellant *never* conceded general criminal liability. In fact, appellant's theory of defense, which was maintained throughout the entire trial, was that Brisbon committed the murder. Introduction of the psychiatric testimony would have in no way aided the jury concerning this issue. At most, this testimony would have put before them extraneous matters, thereby clouding the true matter in controversy. Accordingly, this claim is without merit.

## VI.

The next assignment of error by appellant concerns the prosecution's cross-examination of appellant regarding the racial motivation for the crime. Specifically, the district attorney questioned appellant about possible statements he

made which indicated a desire to kill a white person. Over objection from defense counsel, this questioning was permitted; appellant responded by denying ever making such a statement.

The scope and manner of cross-examination are within the sound discretion of the trial court, and rulings by the court will not be overturned unless there was an abuse of discretion or mistake of law. *Commonwealth v. Sisco,* 484 Pa. 85, 398 A.2d 955 (1979); *Commonwealth v. Fulton,* 318 Pa.Super. 470, 465 A.2d 650 (1983); *Commonwealth v. Katsafanas,* 318 Pa.Super. 143, 464 A.2d 1270 (1983). Furthermore, "[e]vidence of motive is always admissible." *Commonwealth v. Costanzo,* 269 Pa.Super. 413, 419, 410 A.2d 324, 327 (1979); *Commonwealth v. Gwaltney,* 497 Pa. 505, 442 A.2d 236 (1982); *Commonwealth v. Faison,* 437 Pa. 432, 264 A.2d 394 (1970); *Commonwealth v. Gonzales,* 297 Pa.Super. 66, 443 A.2d 301 (1982).

The questions posed by the prosecutor were designed to show the motive for the crime charged. They were relevant and within the accepted limits of cross-examination. We cannot agree with appellant that the questions fall within the bounds of *Commonwealth v. Tirado,* 473 Pa. 468, 375 A.2d 336 (1977), so as to be considered "incompatible with the concept of a fair trial." *Id.,* 473 Pa. at 473, 375 A.2d at 338.

## VII.

Appellant raises another claim of ineffectiveness of counsel in addition to the one addressed in Part II, *supra.*[2] He argues that trial counsel was ineffective in not raising in post-trial motions an alleged error by the trial court when it overruled a demurrer to one of the charged crimes.

2. Appellant also raises an ineffective assistance of counsel argument concerning the hearing court's denial of trial counsel's request for a continuance of the preliminary hearing. As found by the Supreme Court, this issue was moot due to the grand jury approving indictments against appellant. Consequently, we need not address this issue. *Commonwealth v. Dobson,* 302 Pa.Super. 57, 448 A.2d 92 (1982).

In *Commonwealth v. Klinger*, 323 Pa.Super. 181, 470 A.2d 540 (1983), we discussed the role of an appellate court when faced with allegations of ineffective assistance of counsel.

> Our task in cases of alleged ineffectiveness of counsel encompasses both an independent review of the record and an examination of counsel's stewardship of the now challenged proceedings in light of the available alternatives. However, our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967).
>
> We apply the *Maroney* test in two steps. We first determine whether the claim which counsel is charged with not pursuing had some reasonable basis. If the claim was baseless, counsel cannot be found ineffective. Only if the foregone claim is of arguable merit do we proceed to the second step of the *Maroney* standard whether counsel's decision not to pursue the claim had some reasonable basis designed to protect his client's interests. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977).

*Id.* 323 Pa.Super at 181, 470 A.2d at 546.

 In reviewing the issue of the demurrer, we are guided by the following principles. Our Court will review only those issues which have been properly preserved for review, i.e., errors which have been raised specifically in written post-trial motions pursuant to Pa.R.Crim.P. 1123(a). *Commonwealth v. Bethel*, 295 Pa.Super. 312, 441 A.2d 1248 (1982). However, in order to preserve a ruling denying a demurrer, a defendant must rest his case following the adverse ruling. *Commonwealth v. McNeal*, 493 Pa. 395, 426 A.2d 606 (1981); *Commonwealth v. Galloway*, 302 Pa.Super. 145, 448 A.2d 568 (1982). If the defendant presents a defense, the issue of the denial of the demurrer cannot be reviewed on appeal. In the instant case, trial

counsel elected not to rest, but rather to proceed to present a defense. Nevertheless, we may treat the question as if it were properly framed, i.e., "whether the trial court erred in refusing appellant's motion in arrest of judgment—whether the evidence was sufficient in law to support appellant's conviction." *Commonwealth v. McNeal, supra,* 493 Pa. at 397, 426 A.2d at 608. *See also Commonwealth v. Dussinger,* 478 Pa. 182, 386 A.2d 500 (1978); *Commonwealth v. Ilgenfritz,* 466 Pa. 345, 353 A.2d 387 (1976); *Commonwealth v. Smith,* 313 Pa.Super. 138, 459 A.2d 777 (1983).

Appellant challenges the sufficiency of the evidence with respect to the charge of prohibited offensive weapons pursuant to 18 P.C.S. § 908.[3] Section 908 provides in pertinent part:

### § 908. Prohibited offensive weapons

(a) **Offense defined.**—A person commits a misdemeanor of the first degree if, except as authorized by law, he makes, repairs, sells, or otherwise deals in, uses, or possesses any offensive weapon.

. . . .

(c) **Definition.**—As used in this section "offensive weapon" means any bomb, grenade, machine gun, sawed-off shotgun, firearm specially made or specially adapted for concealment or silent discharge, any blackjack, sandbag, metal knuckles, dagger, knife, razor or cutting instrument, the blade of which is exposed in an automatic way by switch, push-button, spring mechanism, or otherwise, or other implement for the infliction of serious bodily injury which serves no common lawful purpose.

In the case at bar, appellant was in possession of a .22 caliber rifle. A rifle of this type does not fall within the specifically enumerated weapons described in § 908(c). Therefore, for appellant to be convicted under this section, the rifle must be included in the last phrase of § 908(c), an

---

**3.** § 908 was amended in 1983. However, the amendment does not affect the section involved in this appeal.

"implement for the infliction of serious bodily injury which serves no common lawful purpose."

In interpreting § 908 we have stated that:

... it is useful to distinguish between those weapons which are offensive *in themselves,* meaning that the universal experience within our society has been that these weapons are used only in furtherance of crime, and those that can be *used* offensively, in the hands of one inclined to do so, but also have recognized uses of a socially acceptable nature.

*Commonwealth v. Adams,* 245 Pa.Super. 431, 436, 369 A.2d 479, 482 (1976) (emphasis in original). The comment to the Model Penal Code, § 5.07, which § 908 was modeled after, is illustrative of the types of weapons that were intended to be excluded from the "prohibited" status under the statute.

Other weapons like sporting rifles, shotguns and revolvers ... have peaceful as well as lethal potentialities.... Not only must we take account of the desires of sportsmen, farmers, and dealers in hunting equipment, we must also recognize that revolvers and knives are frequently carried for defensive purposes.

The conclusion to be drawn from this discussion is that the statute was intended to apply to weapons which serve no lawful purpose, such as, but not limited to, those weapons described in § 908(c). A rifle of the type used in the instant case is not a weapon serving no lawful purpose.[4] Therefore, the evidence was insufficient to support appellant's conviction. Trial counsel's failure to pursue the denial of the demurrer clearly constitutes ineffective assistance of counsel. Accordingly, appellant's conviction for possessing prohibited offensive weapons must be reversed, and the judgment of sentence vacated.

4. We are mindful that a sporting rifle may be used for criminal purposes. However, we are also aware of the lawful uses to which a rifle may be put. "It is not within the category of a bomb, sawed off shotgun, or the like." *Commonwealth v. Rose,* 265 Pa.Super. 159, 180, 401 A.2d 1148, 1159 (1979).

## VIII.

Appellant argues that the evidence was insufficient to sustain a conviction of first-degree murder. In *Commonwealth v. Hogan*, 321 Pa.Super. 309, 312, 468 A.2d 493, 495 (1983), we set out the test for reviewing insufficiency claims:

"The test of sufficiency of the evidence—irrespective of whether it is direct or circumstantial, or both—is whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which if believed the [trier of fact] could properly have based [the] verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted." *Commonwealth v. Minoske*, 295 Pa.Super. 192, 198, 441 A.2d 414, 417 (1982) *quoting Commonwealth v. Frye*, 433 Pa. 473, 481, 252 A.2d 580, 584 (1969). *Accord Commonwealth v. Giles*, 500 Pa. 413, [415], 456 A.2d 1356, 1357 (1983); *Commonwealth v. Wilcox*, [310] Pa.Super. [331], [333], 456 A.2d 637, 639 (1983). In reviewing the evidence, we must consider it in the light most favorable to the Commonwealth, which won the verdict in the trial court. *Commonwealth v. Durrant*, [501] Pa. [147], [149], 460 A.2d 732, 733 (1983); *Commonwealth v. Bachert*, 499 Pa. 398, 402–03, 453 A.2d 931, 933 (1982); *Commonwealth v. Kennedy*, 499 Pa. 389, 392–93, 453 A.2d 927, 928 (1982).

*See also Commonwealth v. Kenny*, 326 Pa. 425, 474 A.2d 313 (1984).

■ A review of the record indicates that the testimony of Daniel Brisbon was sufficient to make out each and every element of first-degree murder beyond a reasonable doubt.

■ While appellant's testimony was at variance with Brisbon's, it is well settled that it is within the province of the jury to pass upon the credibility of witnesses and the weight to be accorded the evidence produced; the jury is free to believe all, part, or none of the evidence. *Commonwealth v. Shaver*, 501 Pa. 167, 460 A.2d 742 (1983).

## IX.

■ The final contention appellant raises concerns the sentencing procedure utilized by the trial court. In reality, his argument is twofold. First, he challenges the consecutive sentence for the robbery conviction as "excessively severe." The imposition of a sentence is with the sound discretion of the sentencing court. *Commonwealth v. Gordon*, 329 Pa.Super. 42, 477 A.2d 1342 (1984).

An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or illwill, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Miemetz*, 282 Pa.Super. 431, 445 n. 12, 422 A.2d 1369, 1376 n. 12 (1980) *quoting, Man O'War Racing Ass'n, Inc. v. State Horse Racing Comm'n*, 433 Pa. 432, 451 n. 10, 250 A.2d 172, 181 n. 10 (1969). *Accord, Commonwealth v. Miller*, 303 Pa.Super. 504, 450 A.2d 40 (1982).

■ We cannot say that the trial court abused its discretion in sentencing appellant. The sentence of five to ten years was well within the limits prescribed by the statute for robbery. *See* 18 Pa.C.S. §§ 1103, 3701. *See also Commonwealth v. Gordon, supra.* The court had before it sufficient information for the sentence given: extensive psychiatric testimony concerning appellant's mentality, background, etc., along with the sentencing recommendations of both counsel for appellant and the Commonwealth.

Appellant's second challenge involves an alleged lack of reasons on the record for the imposition of the sentence for robbery. *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977). Our review of the sentencing record reveals that the court had the benefit of the information described above, which included a detailed sentencing recommendation by defense counsel. More importantly, the court stated that it felt the sentence was necessary because the correc-

tional treatment afforded appellant while imprisoned would be most effective.

Therefore, we reverse appellant's conviction for possessing prohibited offensive weapons, and vacate the judgment of sentence. On all other issues, we affirm.