583 A.2d 1229

COMMONWEALTH of Pennsylvania, Appellant,

v.

Aida L. ROSARIO.

Superior Court of Pennsylvania.

Submitted Oct. 24, 1990.

Filed Dec. 19, 1990.

Joan Weiner, Asst. Dist. Atty., Philadelphia, for Com.
Helen McCaffrey, Philadelphia, for appellee.

Before CAVANAUGH, TAMILIA and HESTER, JJ.

TAMILIA, Judge:

This is the Commonwealth's appeal from a judgment of sentence which departed downward from the sentencing guidelines. Following appellee's conviction for the knowing possession and intent to distribute cocaine, she was sentenced to eleven and one-half (11½) to twenty-three (23) months house arrest[1] followed by thirty-six (36) months probation. The sentence stems from appellee's nonjury conviction of running a cocaine distribution operation out of two row houses in Philadelphia.

On May 7, 1988, Philadelphia police received confidential information that a Hispanic female, known as "Lucy", was conducting the aforesaid drug operation out of her 2840–2842 North Franklin Street homes. On the same date, undercover officers went to the vicinity of the houses and were approached by a Hispanic male exiting 2840. The unidentified male offered to sell them one-sixteenth of an ounce of cocaine. The unidentified male re-entered the 2842 home and returned with the cocaine and completed the illegal transaction. Based on this information, police exe-

---

1. The trial court did not specify conditions or restrictions on appellee's movement, but rather relinquished that duty to the discretion of the probation department's intensive supervision program. The court did find drug treatment with random urine analysis necessary as a condition of the sentence.

cuted a valid search warrant and raided appellee's two row houses at 2840 and 2842 N. Franklin Street; 2840 served as a drug "sales" house, whereas 2842 was appellee's "stash" house. Inside 2840, police found women's clothing only, $280 cash on appellee's bedroom dresser, drug paraphernalia in her bedroom and throughout the house, and 29 grams of cocaine with an estimated street value of $2,900. Drugs were found in dresser drawers reserved solely for the storage of appellee's clothing, as well as in the kitchen area. The paraphernalia gave her the ability to grind, mix, weigh and package the cocaine for sale.

At trial, appellee introduced evidence attempting to infer that an unidentified man had been staying with her off and on for several months prior to the arrest. Appellee called Ms. Aurora Sosa and Larry Ulloa as defense witnesses. Sosa testified an unidentified man had been living or visiting with the appellee around the time of the search of her house (T.T., 5/31/89, pp. 57, 61). Ulloa stated, without identification or any specification, that a Hispanic male had been seen around the house at that time. Based on these scant assertions, appellee asked the court to go one step beyond and find that this phantom was her paramour, and had constructive possession of her house. On these inferences, the court was asked to infer the drugs and paraphernalia belonged to her unidentified friend.[2] The court rejected this baseless defense and found appellee guilty beyond a reasonable doubt of violating 35 P.S. § 780–113.

■ Our studied review of the record satisfies us that there is a wealth of evidence to support the trial court's finding appellee to be in constructive possession of the drugs and paraphernalia as well as to be operating a drug distribution operation out of her two North Franklin Street row homes. *See Commonwealth v. Macolino,* 503 Pa. 201, 469 A.2d 132 (1983). However, in contradiction to its own

2. Neither Sosa nor Ulloa testified that the unidentified man was a boyfriend or lover. The sentencing court made this finding on its own. In fact, Ulloa testified that the man was a renter whereas Sosa stated that she did not "know nothing about [appellee's] personal life." (T.T., 3/31/89, p. 61.)

rejection of the trial defense, the court imposed a lenient sentence, essentially ignoring the sentencing guidelines.[3] The sentencing court portrayed appellee's participation in the drug operation as peripheral and characterized her as a wholly submissive spectator to the drug operation carried out by her boyfriend.  In making this finding, the court directly contradicted and ignored appellee's own testimony as set forth in pertinent part below:

THE COURT: Ms. Rosario?

THE DEFENDANT: All I can say about all the trouble I got into, it taught me a lot.

THE COURT: Was he your boyfriend?

THE DEFENDANT: He was a friend of mines.

THE COURT: A close friend?

THE DEFENDANT: Not actually a boyfriend, but we used to see each other from time to time.

MS. MC CAFFREY: She is getting a little confused.

THE COURT: That is all right.

THE COURT: Did he live with you?

THE DEFENDANT: Yes, he was staying with me.

THE COURT: He stayed in the same bedroom with you?

THE DEFENDANT: Yes.

THE COURT: That is where the stuff was found, in the bedroom?

THE DEFENDANT: Yes.

THE COURT: You knew he was selling stuff, am I correct?

THE DEFENDANT: Yes, but—

THE COURT: Don't lie to me.

THE DEFENDANT: I'm not lying.

THE COURT: You knew he was selling the stuff?

3. With appellant's prior record score of two and an offense gravity score of "E" for an offense under subsection (a)(30) of the Controlled Substance, Drug, Device and Cosmetic Act and involving over two grams of cocaine (here, 29 grams), the sentencing guidelines are as follows: mitigated, 21–27 months; standard, 27–39 months; and aggravated, 39–45 months.  204 Pa.Code Ch. 303, § 303.9.

THE DEFENDANT: I worked two jobs. I don't use drugs.

THE COURT: That is not the question. My question was, you knew he was selling drugs?

THE DEFENDANT: I didn't know he had it in my house.

THE COURT: Where did you think he had it?

THE DEFENDANT: I thought he wouldn't dare to do that in my home.

THE COURT: Where would he be doing it at, 2842, the house next door?

THE DEFENDANT: Yes.

THE COURT: Who lived in the house next door?

THE DEFENDANT: His friend.

THE COURT: You knew his friend was selling drugs?

THE DEFENDANT: There is a lot of things I know in the block, but I don't get involved in that. I didn't know he was bringing that stuff into my home.

(S.T., 5/31/89, pp. 7-9.) The dialogue showed the appellant to be inconsistent and defensive but established her guilty knowledge of the enterprise.

The judge's determination must not be disturbed absent a manifest abuse of discretion. *Commonwealth v. Edrington,* 490 Pa. 251, 416 A.2d 455 (1980). An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence on the record, discretion is abused. *Commonwealth v. Jackson,* 336 Pa.Super. 609, 627, 486 A.2d 431, 441 (1984).

It is apparent that the legislature has vested broad discretion in the trial court to impose a sentence appropriate to each case which comes before it. It is also apparent the legislature has provided a thorough though not exhaustive outline of considerations to focus the court's deliberations in choosing an appropriate sentence. It is only where a

party can articulate reasons why a particular sentence raises doubts that this scheme as a whole has been compromised that the appellate court should review the manner in which the trial court exercised its discretion. Determination of whether the sentence is "not appropriate," "clearly unreasonable," or "unreasonable" must be made with reference to the sentencing code as a whole, not solely with reference to the sentencing guidelines. *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987); *Commonwealth v. Darden,* 366 Pa.Super. 597, 531 A.2d 1144 (1987). 42 Pa.C.S. § 9781(d).

Applying the abuse of discretion standard to the instant facts, we find the trial court erred. The evidence of record simply does not support the sentencing court's finding. As indicated by her testimony, appellee not only denied involvement in the drug operation but also denied full knowledge of the drugs presence in her home. However, by finding appellee guilty of the crimes charged, the court necessarily found appellee to have possessed the cocaine with the requisite intent to distribute. At sentencing, the trial court impermissibly disregarded this adjudicated fact and improperly sentenced appellee to *house arrest* for a period of time far less than the suggested mitigated minimum time for *incarceration.* The trial court reasoned appellant had technically possessed the cocaine only by virtue of owning the house in which the drug operation was conducted, and by permitting herself to be ruled by her overbearing, live-in, drug dealing paramour. The sentencing court stated:

> The court took into consideration that the defendant's actions were peripheral, meaning that while she was not involved directly in the selling of the drugs, she was fully cognizant of the fact that drugs were around and she allowed them to be around in her house. The court did not believe that she was involved in the actual selling of drugs.

(Slip Op., Defino, J., 1/22/90, p. 3.)

If the rationale advanced by the sentencing court is correct, then the appellee should not have been convicted of

possession with intent to distribute. Even under the sentencing rationale, as an accomplice, the court had, within the sentencing scheme provided by the guidelines, leeway to adjust the sentence in accordance with whether she was a central figure as opposed to one less directly involved. Accepting the sentencing court's rationale for the imposition of sentence as stated supra, on the one hand requires a finding of guilt when none existed, or punishment, however lenient, for a crime not committed. If the evidence establishes beyond a reasonable doubt the commission of the crime, as it did, then the rationale for sentencing cannot be sustained and is, therefore, unreasonable.

We hold that once a party is found guilty, the adjudicated elements of the offense must be fully considered and cannot be disregarded when fashioning a sentence. Thus, the question of whether or not defendant was an innocent observer to the crimes committed in her house by someone else, was fully, fairly and finally decided against her at the time of trial. The sentencing court is not empowered to rewrite the script and cast defendant as a woman who merely owned a house in which the illegal activities for which she was convicted were actually being perpetrated by someone else. The sentencing court's findings contradict the adjudicated facts which are necessary to the trial court's arriving at a basis for its guilty finding. Therefore, the court abused its discretion when it departed below the guideline range and imposed a sentence of 11½ to 23 months house arrest for running a cocaine distributorship. The destructive character of such activity to the well being of society is so well documented as not to require further documentation here. To ignore the provisions established by law for controlling and hopefully deterring such behavior brings the judicial process into question and undermines the confidence of society in the judiciary, while bringing solace and encouragement to the drug peddlers.[4]

4. We note that appellee, in apparent satisfaction with the sentence entered in the trial court, did not consider it necessary to file an appellate brief with this Court.

Judgment of sentence reversed and case remanded for resentencing within the applicable guideline range.

Jurisdiction relinquished.

Dissenting opinion by CAVANAUGH, J.

CAVANAUGH, Judge, dissenting.

I must respectfully dissent.

I begin by noting that no brief has been filed on behalf of the appellee. Court records indicate that all efforts of the prothonotary of this court and the Commonwealth to contact appellee's attorney of record have failed, and apparently the appellee herself is unaware of the whereabouts of her attorney. As such, I can only conclude that counsel has abandoned representation of her client.

In doing so, counsel for the appellee has failed to comply with the requirements regarding withdrawal of counsel as set forth historically in *Commonwealth v. Palmer*, 455 Pa. 111, 314 A.2d 853 (1974), and no waiver of the right to counsel has been shown, as required by *Commonwealth v. Collins*, 295 Pa.Super. 380, 383, 441 A.2d 1283, 1284 (1982) (citations omitted).

Additionally, even if this were a collateral appeal which did not involve the strict requirements of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) rehrg. denied at 388 U.S. 924, 87 S.Ct. 2094, 18 L.Ed.2d 1377, we would be required to review counsel's explanation of a no-merit letter if one were submitted. See *Commonwealth v. Finley*, 379 Pa.Super. 390, 550 A.2d 213 (1988).

My review of the extraordinary posture of this appeal leads me to conclude that the abandonment of representation of the appellee has worked to her serious prejudice. I would therefore hold that this case must be remanded for the appointment of counsel or to allow appellee to hire new counsel if she is in a position to do so. In so concluding, I note that the Commonwealth in this matter has filed an appeal and even though there is no appellee's brief, sought and obtained permission to present a "reply brief". More-

over, it appears to me that the Commonwealth has chosen to couch its appeal in language characterized by an *ad hominum* attack on the trial judge. The majority result will be particularly devastating to the appellee since she undoubtedly will not learn of the majority's mandate until she is summoned for resentencing presumably to face a penitentiary sentence now that her county sentence has been vacated as inadequate. Furthermore, I believe the majority's disposition eradicates the trial judge's traditional powers of lenity and compassion which our court should reserve for the discretion of the trial judges who have firsthand knowledge of and exposure to convicted defendants.

Secondly, I note that the majority disposition fails to give due deference to the mandates of *Commonwealth v. Devers*, 519 Pa. 88, 546 A.2d 12 (1988). See also *Commonwealth v. Fenton*, 388 Pa.Super. 538, 566 A.2d 260 (1989).

Finally, appellate counsel could argue the effect of *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987), since this is an appeal from the discretionary aspect of sentencing. Our court has not hesitated to dismiss such appeals when they fail to state substantial grounds for consideration of the appeal. See, *e.g.*, *Commonwealth v. Blair*, 394 Pa.Super. 207, 575 A.2d 593 (1990), and *Commonwealth v. Smith*, 394 Pa.Super. 164, 575 A.2d 150 (1990).

Since I feel that the majority disposition seriously compromises the appellee's rights I would remand for a hearing on representation and with directions to provide for counsel under the proper circumstances.