**UNITED STATES of America**

v.

**Randy H. PELLOWITZ.**

Civ. A. No. 93–4277.
Crim. No. 91–667–01.

United States District Court,
E.D. Pennsylvania.

Dec. 16, 1993.

Pellowitz, pro se.

Michael R. Stiles, U.S. Atty., Tina W. Gabrielli, Richard W. Goldberg, Asst. U.S. Attys., Philadelphia, PA, for U.S., for respondent.

### *MEMORANDUM*

WALDMAN, District Judge.

Presently before the court is defendant-petitioner's petition to vacate his sentence pursuant to 28 U.S.C. § 2255.

On February 18, 1992, defendant pled guilty to illegal possession on June 11, 1990 of two machine guns in violation of 26 U.S.C. § 5861(d), falsifying and failing to keep required records regarding the acquisition of 20 firearms in violation of 18 U.S.C. § 922(m), and knowingly selling a firearm to a convicted felon on April 5, 1991 in violation of 18 U.S.C. § 922(d)(1).

The pertinent statutes provide for a maximum period of incarceration of fifty years. Utilizing the Sentencing Guidelines in effect at the time of sentencing on May 26, 1992, the probation office calculated a total offense level for defendant of 18 and placed him in criminal history category I. The corresponding Guideline range was 27 to 33 months imprisonment. The court sentenced defendant to a term of incarceration of 27 months, to be followed by a term of supervised release of three years.

Defendant asserts that this sentence contravenes the Ex Post Facto clause; that the counts of conviction should not have been separately grouped, with a resulting two level enhancement; and, that he was denied effective assistance of counsel at sentencing essentially because counsel agreed with the offense level calculated by the probation office.

Pursuant to the Sentencing Guidelines in effect at the time of sentencing, the twenty-three counts were placed into three groups. Counts 1 and 2 were grouped together with a base offense level of 18. Counts 3 through 22 were grouped together with an adjusted offense level of 10. Group three consisted of Count 23 with an offense level of 12.

A sentencing court applies the Guidelines in effect on the date a defendant is sentenced unless such application would result in a violation of the Ex Post Facto clause of the U.S. Constitution. *U.S. v. Seligsohn,* 981 F.2d 1418, 1424 (3d Cir.1992); U.S.S.G.

§ 1B1.11. Had defendant's sentence been calculated under the respective Guidelines in effect at the time of the commission of his offenses, these groupings would have resulted in offense levels of 16, 10 and 12.[1] With a reduction for acceptance of responsibility, the total offense level would be 14 with a corresponding guideline range of 15–21 months.[2]

Pursuant to the so-called one book rule, sentencing courts apply the respective versions of the pertinent Guidelines as a cohesive whole. *See* U.S.S.G. § 1B1.11 (Nov. 1992); *U.S. v. Boula,* 997 F.2d 263, 266 (7th Cir.1993); *U.S. v. Warren,* 980 F.2d 1300, 1304–06 (9th Cir.1992); *U.S. v. Lenfesty,* 923 F.2d 1293, 1299 (8th Cir.), *cert. denied,* 499 U.S. 968, 111 S.Ct. 1602, 113 L.Ed.2d 665 (1991); *U.S. v. Stephenson,* 921 F.2d 438, 440–41 (2d Cir.1990). The Third Circuit, however, has held that the offense specific guideline for each pertinent period must be used to calculate the score for each offense prior to grouping to satisfy ex post facto concerns. *See Seligsohn,* 981 F.2d at 1426.

Subsequent to *Seligsohn,* however, the Sentencing Commission promulgated Amendment 474 rejecting the underlying rationale in that case. *See* U.S.S.G. § 1B1.11(b)(3), comment. (backg'd.) and App. C (Nov. 1, 1993). Pursuant to this Amendment, courts are directed in multi-count cases to compare the Guidelines in effect on the date the last criminal act was committed with those in effect at the time of sentencing when making an ex post facto determination. The court does not perceive the ex post facto implications of doing so as starkly as did the Court in *Seligsohn.*

 Clearly, a defendant may receive a sentence for his most recent criminal act which is enhanced, pursuant to a penalty provision in effect at the time of that act, by virtue of prior offenses for which he has been sentenced. *Gryger v. Burke,* 334 U.S. 728,

---

1. Under the November 1990 Guidelines, the base offense level for the machinegun violations was increased from 16 to 18.

2. The probation officer grouped the respective counts pursuant to § 3D1.2(a) and (b). If the offenses were grouped, as they arguably could have been, pursuant to § 3D1.2(d), the total offense level would have been 17 with a corresponding guideline range of 24–30 months. *See* U.S.S.G. §§ 3D1.3(b) and 3D1.4. If the sentence had been computed according to the 1990 Guidelines, utilizing one such group, the adjusted offense level would be 20. Contrary to petitioner's assumption, the same result would pertain under the 1991 Guidelines to which he makes reference.

732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948); *U.S. v. Bucaro,* 898 F.2d 368, 371 (3d Cir.1990); *Covington v. Sullivan,* 823 F.2d 37, 39 (2d Cir.1987). Consistent with the Constitution, a defendant's sentence may be enhanced by virtue of prior relevant uncharged criminal conduct undertaken prior to enactment of the penalty enhancement provision. *See U.S. v. Ykema,* 887 F.2d 697, 700 (6th Cir.1989). Consistent with the approach mandated by the Commission, a defendant is on notice when he commits the last in a series of criminal acts that by doing so he effectively has subjected himself to an enhanced sentence for and because of that act premised on the totality of his criminal conduct.

■ Nevertheless, *Seligsohn* is the law of this circuit. The court is not inclined to speculate on whether following the Amendment, the Circuit Court will alter its position or will refuse to implement the Amendment as unconstitutional. The 1993 Amendment does more than merely clarify § 1B1.11. Rather, in the words of the Commission, it "extends" for the first time the one book rule to multi-count cases. The court concludes that it is fair and appropriate to apply *Seligsohn* in this case.

■ To ensure the relief he seeks, however, petitioner also must prevail on his argument that all of his offenses should have been grouped together pursuant to § 3D1.2(b).

Grouping of all counts pursuant to § 3D1.2(b) is appropriate if the "counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." When counts are so grouped, the appropriate offense level is "the highest offense level of the counts in the Group." *See* § 3D1.3(a). In the instant case, the criminal acts do appear to reflect the same objective and common scheme of facilitating illegal trafficking in firearms by ignoring legal requirements regarding the acquisition and disposition of firearms.[3]

Where society or the community at large is the victim, a grouping decision is based on a determination of the nature of the societal interest invaded by each offense. *U.S. v. Riviere,* 924 F.2d 1289, 1305 (3d Cir.1991); U.S.S.G. § 3D1.2, comment. (n. 2).[4] Such a determination will largely turn on how broadly one assesses the interest that various enactments were designed to promote or the harm that they were devised to protect against.[5] At the extreme, one could conclude that virtually all criminal laws are designed to protect innocent citizens against physical or economic harm and to promote public safety or welfare.

The interest of society in prohibiting the sale of a firearm to a felon is to keep firearms out of the hands of those whose conduct suggests that they cannot be trusted to use a firearm only for lawful purposes.

Machine guns are extraordinarily dangerous weapons the possession and use of which is now generally prohibited by even law-abiding citizens other than government agents. *See* 18 U.S.C. § 922(*o*). The mere presence of a machine gun in the community poses an unusual risk of harm. A machine gun inherently poses a far greater danger than a handgun.

At some point, a quantitative difference in harm or risk becomes qualitative. We would not likely group together an unlawful possession of a bomb with an unlawful possession of a switchblade knife. *See, e.g., U.S. v. Bakhtiari,* 913 F.2d 1053, 1062 (2d Cir.1990) (unlaw-

---

3. The government merely argues that the offenses were of "differing seriousness" and were "separated" in time. This is clearly true. It does not necessarily follow, however, that they did not involve a common objective or scheme, as well as the same victim or closely related societal interests.

4. Application note 2 as amended in 1991 elaborates that counts are grouped together when the societal interests that are harmed are "closely related." Prior thereto, counts were grouped together when they involved "substantially the same harm." The court perceives no meaningful difference between harm to "closely related" interests and acts causing harm that is "substantially the same."

5. This is not a case where the sentencing range has been enhanced for the same conduct because of the status of the offender or because of an overlap of one offense with a specific characteristic of another offense. *See U.S. v. Riviere,* 924 F.2d at 1303–05.

ful possession of firearm and unlawful possession of silencer do not involve "substantially the same harm" as silencer renders handgun "far more threatening"); *U.S. v. Pope,* 871 F.2d 506, 510 (5th Cir.1989) (unlawful possession of handgun and silencer involve distinct harms and different societal interests).[6] The court concludes that the probation officer properly grouped the machine gun offenses together and separately from the other counts.

One interest of society in imposing record keeping requirements on dealers is to ensure that firearms can be traced to facilitate the investigation of crime and apprehension of offenders, without regard for the general lawfulness of the weapon or fitness of one who may acquire it. For instance, society has an interest in facilitating the tracing of a firearm to a law-abiding owner from whom it was taken by one who used it to commit a violent offense and who police are seeking to identify and apprehend.

It appears, however, that the record keeping requirements were viewed more generally as part of a comprehensive scheme to promote the interest of society in combatting the criminal use of firearms by deterring sales to specified classes of persons. *See* 1968 U.S.Code Cong. and Adm.News, pp. 4410, 4412. This is an interest substantially the same as and closely related to that reflected in the proscription of sales to felons, particularly where this is accomplished by the falsification of a required record as was done in the instant case.

Accordingly, the court concludes that the counts in this case should have been placed into two groups. Whether grouped pursuant to subsection (a), (b) or (d) of § 3D1.2, the resulting offense level is 18. *See* U.S.S.G. § 3D1.4. With the reduction for acceptance of responsibility, the resulting sentencing range is 21 to 27 months.

Licensed firearms dealers, such as petitioner, who abuse their privilege are in a unique position to foment and facilitate an unlawful flow of weapons that is highly destructive to society. As noted, the unauthorized possession of a machine gun poses an exceptional threat. In large part because petitioner's expression of remorse seemed genuine, the court sentenced him to six months less in prison than it could have.[7] The seriousness of the offenses and the need to deter others, however, are also important considerations. The court continues to believe that 27 months of incarceration is an appropriate sentence in this case.

The court has carefully reviewed petitioner's contentions regarding his allegation of ineffective assistance of counsel. The court is convinced that there is not a "reasonable probability" that petitioner would have received a more favorable sentence had counsel proceeded differently at the time of sentencing. *See Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).

Accordingly, petitioner's motion will be denied. An appropriate order will be entered herewith.

## *ORDER*

**AND NOW,** this 16th day of December, 1993, upon consideration of petitioner's petition to vacate his sentence pursuant to 28 U.S.C. § 2255 and consistent with the accompanying memorandum, **IT IS HEREBY ORDERED** that said petition is **DENIED and DISMISSED.**

---

**6.** *See also* 26 U.S.C. § 5845(a) (excepting machine guns and inherently destructive devices from general exception for antique firearms); *Commonwealth v. Jackson,* 336 Pa.Super. 609, 624–25, 486 A.2d 431 (1984) (distinguishing between conventional firearms and purely offensive weapons).

**7.** Petitioner has recently been released from prison and placed in a half-way house.