J-S03036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID REYES | : | |
| | : | |
| Appellant | : | No. 985 EDA 2021 |

Appeal from the PCRA Order Entered April 14, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001249-2013

BEFORE: BOWES, J., McCAFFERY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED DECEMBER 20, 2023**

David Reyes ("Reyes") appeals from the order dismissing his first petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

The PCRA court provided the following factual and procedural history:

> [I]n May [] 2012, at approximately 5:34 PM, [Reyes] shot and killed Samuel Rivera (the "victim") at the victim's place of employment, Jiffy Lube[, on] Aramingo Avenue in the city and county of Philadelphia. Prior to this shooting, [Reyes] and the victim had argued about the victim's relationship with [Reyes's] sister[,] Jacqueline Reyes[ ("Ms. Reyes"),] and her son[,] E.C. At trial, Ms. Reyes testified that she had a relationship with the victim that began in 1996 and ended in 2003 because the victim was allegedly abusive to her and her family. In 2008, [Reyes] accused the victim of sexually abusing E.C. These accusations led to criminal charges being brought against the victim, who was arrested[, tried,] and later acquitted[, following a non-jury trial ("the victim's child abuse trial")]. [At the conclusion of the victim's child abuse trial, the trial court found the prosecution's

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

witnesses incredible, and, further, that someone—unidentified in the record for this case *sub judice*—had planted a memory of abuse in E.C.'s mind.]

Before fatally shooting the victim [in 2012], [Reyes] had walked to the Jiffy Lube[, where the victim worked,] with a concealed weapon[,] and engaged the victim in an argument[,] [during which Reyes] again accused the victim of sexually assaulting [Reyes's] minor nephew. According to [Reyes], the victim then referenced his acquittal of those charges [and then taunted Reyes, including, saying, "Fuck your mother," to Reyes about Reyes's recently deceased mother.]

During this exchange[,] the victim was inside a vehicle which was being serviced. The victim began to point and yell at [Reyes] and scream for someone to call police. As he continued to yell, [Reyes] pulled a handgun from his waistband and shot the victim at least six times. After the shooting, [Reyes] walked away from the Jiffy Lube. He walked through an alleyway and then onto Tulip Street where he disposed of a gun holster, black jacket, and ear buds.

William Nash [("Nash")], another Jiffy Lube employee, heard the victim yelling for someone to call police and dialed 911. Nash later gave two statements to police and identified [Reyes] from a photograph as the shooter. . . . Derrick and Shanta Wilson and their sixteen-year-old daughter . . . were inside their vehicle and exiting a shopping center parking lot when they witnessed the murder. . . . Later that day, the Wilson family provided statements to Homicide Unit detectives. Because the Wilson's [sixteen]-year-old daughter saw the shooter's face, homicide detectives visited the Wilson home the next day and interviewed her a second time. At this second interview, she circled [Reyes's] photograph and identified him as the shooter.

When Police Officer Jason Smaron arrived on the scene a few minutes after the shooting, he observed the victim inside the vehicle with his legs on the driver's side and his waist and torso leaning over the console towards the front passenger seat. At approximately 5:56 p.m., the victim was pronounced dead at Temple University Hospital. . . . Police would later locate [Reyes] in Florida[,] where [Reyes] was residing prior to being apprehended.

On January 5, 2015, [Reyes received a plea offer from the Commonwealth, conferred with counsel, and informed the trial court that he was rejecting the offer; and he thereafter] underwent a trial by jury [that] lasted for five days[. At trial, Reyes testified, and he also presented testimony by Allan M. Tepper, J.D., Psy.D ("Dr. Tepper"), who opined that Reyes's "modest problem-solving skills," history of drug abuse, "longstanding underlying mental health problems," "underlying emotional problems," his grief over his mother's recent death, and the verbal confrontations with the victim, all could or would have limited his ability to form the specific intent to kill. ***See*** N.T., 1/8/15, at 233-36. While trial counsel attempted to elicit testimony from Dr. Tepper about provocation and also requested a voluntary manslaughter jury instruction, the trial court precluded the testimony and declined to read the jury instruction, concluding that there was no factual basis to support either. ***See id***. at 202-09, 255. At the conclusion of the trial, the jury found Reyes] guilty of murder in the first degree, possession of an instrument of crime, carrying a concealed firearm without a license, and carrying a firearm in the public streets in Philadelphia. [The trial court sentenced Reyes] to[, *inter alia*,] life imprisonment on the first[-]degree murder conviction . . ..

The procedural history in this matter is . . . complex. [I]n February [] 2015, [Reyes] filed a timely [n]otice of [a]ppeal to the Pennsylvania Superior Court. [I]n February [] 2017, the Pennsylvania Superior Court[, having rejected, *inter alia*, Reyes's argument that he was entitled to a provocation defense or voluntary manslaughter jury instruction,] affirmed [his] judgment of sentence. [I]n March [] 2017, [Reyes] filed a [p]etition for [a]llowance of [a]ppeal with the Pennsylvania Supreme Court. On August 8, 2017, the aforementioned petition was denied. On March 6, 2018, [Reyes] filed a timely PCRA [p]etition [via privately-retained counsel, Jack McMahon, Esquire]. [Following uncertainty about whether Attorney McMahon was continuing to represent Reyes or whether Reyes needed new counsel to be appointed, the matter was continued in August 2018.] On September 6, 2018, George Yacoubian, Esquire, [was appointed to represent Reyes]. [Attorney Yacoubian moved to withdraw later that month, the PCRA court granted the motion, and Attorney McMahon again entered his appearance on December 6, 2018, yet failed to appear for status hearings on December 7, 2018 and January 17, 2019. On January 18, 2019, the PCRA court again appointed Attorney Yacoubian to represent Reyes.] [I]n March []

2019, Attorney Yacoubian filed a [no-merit letter pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988) and ***Commonwealth v. Finley***, 550 A2d 213 (Pa. Super. 1988) (*en banc*). That same month, the PCRA court] issued a [Pa.R.Crim.P.] 907 [n]otice of [d]ismissal. . . . [Reyes] filed a motion for extension of time so he could respond to the [Rule] 907 [n]otice. [Reyes] filed additional *pro se* motions which were not ruled on by the PCRA [c]ourt. On May 3, 2019, the PCRA [c]ourt issued an order dismissing [Reyes's] PCRA [p]etition.

[Reyes] filed a [timely n]otice of [a]ppeal [i]n May [] 2019 through [Attorney McMahon]. [Subsequently i]n May [] 2019, [Reyes] filed a motion to proceed *pro se.* The PCRA Court did not rule on this motion[, but instead] ordered [Reyes] to file a [Pa.R.A.P.] 1925(b) [s]tatement. [Reyes filed in the Superior Court a petition to proceed *pro* se, and o]n July 2, 2019, the Pennsylvania Superior Court remanded the matter for a . . . hearing [pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998), to determine whether Reyes's waiver of counsel was knowing intelligent, and voluntary]. [I]n August [] 2019, the PCRA Court permitted [Reyes] to proceed *pro se.* On May 21, 2020, [t]he Pennsylvania Superior Court [determined that Attorney Yacoubian's no-merit letter, and the PCRA court's Rule 907 notice, were defective, and] vacated the PCRA [c]ourt's order dismissing [Reyes's] petition[,] and remanded for . . . [Attorney Yacoubian] to file a proper motion to withdraw and an amended [***Turner***/]***Finley*** [no-merit] letter. [***See generally Commonwealth v. Reyes***, 237 A.3d 468 (Pa. Super. 2020) (unpublished memorandum).]

[Attorney Yacoubian filed another no-merit letter and motion to withdraw in October 2020, and i]n January [] 2021, th[e PCRA] court filed a [n]otice of [d]ismissal under Rule 907. [Reyes] filed a [m]otion for [e]xtension of [t]ime and[, later, a] response[] to the [Rule] 907 [n]otice [in March 2021, in which Reyes sought leave to file an amended PCRA petition *pro se* and raised layered claims of ineffectiveness against PCRA counsel grounded on five assertions of ineffectiveness against trial and appellate counsel]. After reviewing the *pro se* filing[], th[e] court dismissed [Reyes's] PCRA [p]etition [i]n April [] 2021. [I]n May [] 2021[, Reyes] filed a timely *pro se* [n]otice of [a]ppeal to the Pennsylvania Superior Court[, after which the PCRA court, apparently erroneously, appointed counsel; and, following Reyes's petition in the Superior Court to proceed *pro* se, the Court, in

- 4 -

October 2021,] remand[ed the case] for the PCRA court to conduct a[nother] **Grazier** hearing to inquire as to whether [Reyes] could rightly represent himself[. I]n April [] 2022[,] the PCRA court granted [Reyes's motion to proceed *pro* se]. [Reyes timely] filed his [Pa.R.A.P.] 1925(b) statement . . ..

PCRA Court Opinion, 5/18/22, 1-5 (footnote and internal citations to the record omitted). The PCRA court likewise complied with Rule 1925.

Reyes raises the following issues for our review:

1. Did [Reyes's two PCRA attorneys] fail to fulfill their duty . . . to provide meaningful assistance to afford [Reyes] a full and fair opportunity to raise meritorious claims of trial counsel's ineffectiveness?

2. Did the [PCRA] court deny a fundamentally fair PCRA proceeding [by] *sua sponte* removing privately[-]retained PCRA counsel and then . . . appointing [a second PCRA attorney to represent Reyes] without providing any notice to [Reyes] that [the first PCRA] counsel was . . . removed and new PCRA [attorney] appointed?

3. Did the PCRA court abuse its discretion in denying [Reyes's] request to file an amended/supplemental petition pursuant to Pa.R.Crim.P. 905(A) to specifically raise five meritorious claims of trial counsel's ineffective assistance that PCRA counsel inexcusably failed to raise?

Reyes's Brief at 4 (unnecessary capitalization omitted).

We begin with our standard of review for an order dismissing a PCRA petition:

Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the record in the light most favorable to the prevailing party in the PCRA court. We are bound by any credibility determinations made by the PCRA court where they are supported by the record. However, we review the PCRA court's legal conclusions *de novo*.

*Commonwealth v. Staton*, 184 A.3d 949, 954 (Pa. 2018) (internal citation and quotations omitted).

In his three issues, Reyes argues that his two PCRA attorneys rendered ineffective assistance of counsel; and, further, that the combination of their errors, along with the PCRA court's prior failure to notify him about the change in counsel, in addition to the court's denial of his motion for leave to file an amended petition *pro se*, precluded him from presenting five meritorious issues for the PCRA court's consideration.

Reyes, in his first issue, presents layered claims of ineffectiveness against his PCRA attorneys based on their failure to advance five ineffectiveness claims against trial and appellate counsel. In order to be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in section 9543(a)(2), which includes the ineffective assistance of counsel. **See** 42 Pa.C.S.A § 9543(a)(2)(i); **see also** *Commonwealth v. Benner*, 147 A.3d 915, 919–20 (Pa. Super. 2016).

To prevail on an ineffective assistance of counsel claim, the petitioner has the burden to prove: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." **Benner**, 147 A.3d at 920 (internal citations and quotations omitted). The failure to

satisfy any of these prongs is fatal to a petitioner's claim. *See id*. Additionally, counsel is presumed effective. *See id*.

Where a first PCRA petition is concerned, petitioners may, "after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." *Commonwealth v. Bradley*, 261 A.3d 381, 401 (Pa. 2021). "Whe[n] a petitioner alleges multiple layers of ineffectiveness, he is required to plead and prove, by a preponderance of the evidence, each of the three prongs of ineffectiveness relevant to each layer of representation." *Commonwealth v. Parrish*, 273 A.3d 989, 1004 n.11 (Pa. 2022). "In determining a layered claim of ineffectiveness, the critical inquiry is whether the *first attorney* that the petitioner asserts was ineffective did, in fact, render ineffective assistance of counsel." *Commonwealth v. McCready*, 295 A.3d 292, 299 (Pa. Super. 2023) (internal citation, quotations, and brackets omitted; emphasis in original). Our Supreme Court has provided that, "[i]n some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims," though, "in other cases, the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter." *Bradley*, 261 A.3d at 402 (internal citation omitted). In support of a remand for an evidentiary hearing on PCRA counsel's ineffectiveness, a petitioner is "required to provide more than mere boilerplate

assertions of PCRA counsel's ineffectiveness." *Id*. (internal citation and quotations omitted). The PCRA petitioner "has the burden to persuade this Court that the PCRA court erred and that such error requires relief." *Commonwealth v. Wholaver*, 177 A.3d 136, 144–45 (Pa. 2018) (internal citations omitted). Further, "it is well settled that this Court may affirm a valid judgment or order for any reason appearing as of record." *Id*. at 145 (internal citation omitted).

Because "the critical inquiry" for layered ineffectiveness claims is whether the earlier attorneys rendered ineffective assistance of counsel, we first analyze Reyes's five assertions of ineffectiveness against trial and appellate counsel.

In his first assertion of ineffectiveness against trial counsel, Reyes argues counsel "failed to provide adequate and competent advice pertaining to a plea proffer by the Commonwealth." Reyes's Brief at 29. An assertion of ineffectiveness in connection with the entry of a guilty plea merits relief only if the ineffectiveness caused the defendant to enter an involuntary or unknown plea:

> Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. Thus, to establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

***Commonwealth v. Pier***, 182 A.3d 476, 478–79 (Pa. Super. 2018) (internal citations, quotations, and footnote omitted). Following successful plea negotiations and a plea of guilty, a defendant is bound by his statements made during the plea colloquy. ***See Commonwealth v. Reid***, 117 A.3d 777, 783 (Pa. Super. 2015). "The law does not require that [the defendant] be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that his decision to plead guilty be knowingly, voluntarily, and intelligently made." ***Commonwealth. v. Timchak***, 69 A.3d 765, 770 (Pa. Super. 2013) (internal citation, quotations, and brackets).

Here, Reyes fails to set forth any factual basis whatsoever in support of his claim that trial counsel failed to provide adequate and competent advice in connection with his plea offer, or explain how PCRA counsel was ineffective for failing to raise this issue. Additionally, the PCRA court has cogently demonstrated that the trial court colloquied Reyes on the record about the terms of the Commonwealth's plea agreement and Reyes affirmed that he had spoken with trial counsel about the offer and decided to reject it. ***See*** PCRA Court Opinion, 5/18/22, at 9-11 (quoting N.T., 1/5/15, at 12-15). Because Reyes has failed to set forth any facts to show that his claim of ineffectiveness against trial counsel, in connection with his guilty plea, has arguable merit, trial counsel cannot be deemed ineffective, nor can PCRA counsel be ineffective for failing to present this claim of trial counsel's ineffectiveness. ***See McCready***, 295 A.3d at 299 (providing that for a layered claim of

- 9 -

ineffectiveness, the critical question is whether the first attorney was ineffective); *see also Bradley*, 261 A.3d at 402 (a PCRA petitioner must set forth more than boilerplate assertions of ineffectiveness against PCRA counsel to merit relief).

In his second and third assertions of ineffectiveness against trial counsel, Reyes maintains counsel was ineffective for failing to "object [or] request a mistral or curative jury instruction when the prosecutor engaged in misconduct" during his cross-examination of Reyes. Reyes's Brief at 29. Reyes further argues that, following the trial court's ruling sustaining a defense objection during this line of questioning, and thereafter issuing a curative instruction, trial counsel should nevertheless have moved for a mistrial, and was ineffective for failing to do so. *See id*. These issues involve the same facts and law; therefore, we address them together. The law regarding ineffectiveness claims grounded in prosecutorial misconduct is as follows:

> [A] claim of ineffective assistance grounded in trial counsel's failure to object to a prosecutor's conduct may succeed when the petitioner demonstrates that the prosecutor's actions violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process. To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. The touchstone is fairness of the trial, not the culpability of the prosecutor. Finally, not every intemperate or improper remark mandates the granting of a new trial; reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and

> hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict.

*Commonwealth v. Koehler*, 36 A.3d 121, 144 (Pa. 2012) (internal citations, quotations, and brackets omitted). Additionally, a mistrial is an "extreme remedy [that] must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial." *Commonwealth v. Bracey*, 831 A.2d 678, 682 (Pa. Super. 2003) (internal citation omitted). A trial court "may remove taint caused by improper testimony through curative instructions," and "must consider all surrounding circumstances before finding that curative instructions were insufficient and the extreme remedy of a mistrial is required." *Id*. (citations omitted). Lastly, jurors are presumed to have followed the trial court's instructions. *See Commonwealth v. Talbert*, 129 A.3d 536, 542 (Pa. Super. 2015).

Here, Reyes again does not state the factual basis for his claim of prosecutorial misconduct. However, he asserts it occurred during his cross-examination and involved "prejudicial 'testimonial hearsay.'" Reyes's Brief at 29. Reyes ostensibly means to refer to the point in his cross-examination, after Reyes had testified he did not "hate" his victim, *see* N.T., 1/8/15, at 176, but "disliked" him, *see id*. at 181. The Commonwealth subsequently impeached Reyes with his prior testimony at the victim's child abuse trial, which included statements that Reyes "couldn't stand" the "kind of person he [the victim] is." *See id*. at 197. The Commonwealth also read findings of fact from the trial court in the victim's child abuse trial during which the trial

court found Reyes incredible and concluded someone had planted a memory of abuse in the child abuse victim. *See id*. at 188-90.

The PCRA court considered these issues and concluded they were meritless:

> [Reyes] alleges that his trial counsel was ineffective for failing to object to prosecutorial misconduct or request either a mistrial or a curative instruction during cross-examination. This issue is meritless. [Reyes's] trial counsel objected throughout [the] cross-examination.

> * * * *

> . . . It appears as though [Reyes] may believe that [trial counsel] did not object because [the trial court] either overruled [the] objections or did not rule on [them]. However, the mere fact that [the] objections failed does not equate to failing to object.

> * * * *

> [Additionally, the trial court,] upon hearing [trial counsel's] objection regarding the information presented by the prosecutor regarding the victim's prior trial where the victim was found not guilty, provided [a curative] instruction.

PCRA Court Opinion, 5/18/22, at 11-12.

Following our review, we conclude the PCRA court's findings are supported by the record and its legal conclusions error-free. Reyes faults trial counsel for not objecting or requesting a mistrial or curative jury instruction; however, trial counsel objected several times, eleven of which the PCRA court noted, *see id*., and in response to an objection by trial counsel to the trial court's findings in the victim's child abuse trial, the trial court here held a sidebar, after which it issued the following curative instruction to the jury:

> Ladies and gentlemen of the jury, you've heard a good deal of testimony regarding another trial wherein the [victim] in this case was on trial. The [victim] . . . was found not guilty by a judge. That is a fact that you may consider. The judge's reasoning for that is stricken. You may not consider the judge's commentary. You may obviously consider the fact that the [victim] was exonerated of the charge lodged against him.

N.T., 1/8/15, at 190-91. Thus, counsel objected and received a curative instruction. The jurors are presumed to have followed the instruction. *See* *Talbert*, 129 A.3d at 542.[2] Reyes fails to advance a colorable argument that the curative instruction was insufficient and that the "extreme remedy of a mistrial [was] required." *Bracey*, 831 A.2d at 682 (Pa. Super. 2003).[3]

_____

[2] While the trial court in the victim's child abuse case found that someone had planted memories in the complainant's mind, and the Commonwealth read this into the record, this statement was addressed by the trial court's curative instruction; further, trial counsel, on re-direct clarified that the judge there had not accused Reyes of implanting, or found that he had implanted, false memories in the complainant. *See* N.T., 1/8/15, at 198-99. Additionally, Reyes continued to maintain at his own trial that the victim was a "pedophile," which put before the jury the issue of the victim's acquittal in the child abuse trial. *See id*. at 185 (Reyes testifying that the victim was a pedophile).

[3] In any event, once a party moves for a mistrial, the decision of whether to grant it is within the trial court's discretion, and its decision is subject to an abuse of discretion standard. *See Commonwealth v. Moury*, 992 A.2d 162, 175 (Pa. Super. 2010). Reyes has advanced no argument that a motion for a mistrial was likely to be successful or that the trial court would have abused its discretion by denying it.

Further, to the extent that Reyes maintains trial counsel was ineffective for failing to object to his, Reyes's, prior statements at the victim's trial, such statements were not hearsay. *See* Pa.R.E. 803(25) (providing that statements by a party opponent are not excepted from the rule against hearsay); *see also Commonwealth v. Williams*, 176 A.3d 298, 325 (Pa. Super. 2017) (holding that a recording of a conversation involving the
*(Footnote Continued Next Page)*

In his fourth assertion of ineffectiveness, Reyes argues trial counsel was ineffective for failing to request a voluntary manslaughter jury instruction, since he acted in the "heat of passion" when he shot the victim. *See* Reyes's Brief at 30. Similarly, in his fifth assertion of ineffectiveness, Reyes asserts trial and appellate counsel were ineffective for failing to raise the issue of provocation or seek a voluntary manslaughter jury instruction grounded in federal constitutional law. *See id*. The law regarding voluntary manslaughter is as follows: Under Pennsylvania law, two different mental states can support a charge of voluntary manslaughter, one of which is as follows: a person is guilty of "heat of passion" voluntary manslaughter if he acts "under a sudden and intense passion resulting from serious provocation by . . . the individual killed." 18 Pa.C.S.A. § 2503(a)(1); *see also Commonwealth v. Soltis*, 687 A.2d 1139, 1142 (Pa. Super. 1996).

Further:

> Under Pennsylvania law, a homicide defendant is entitled to a charge on involuntary or voluntary manslaughter only if the evidence adduced at trial would reasonably support a verdict on such a charge. In other words, a trial court can give a manslaughter instruction only when there is evidence tending to show that the defendant is not guilty of the crime of murder but

---

defendant was fell within the hearsay exception in Rule 803(25) insofar as they were the defendant's statements). Additionally, Reyes's prior statements were relevant for impeachment purposes and to establish his motive to kill the victim: Reyes testified at his own trial that he had not been angry at the victim for trying to get custody of Reyes's nephew. *See* N.T., 1/8/15, at 183. However, at the victim's child abuse trial, Reyes testified that the victim had to be "crazy" to try to get custody of Reyes's nephew, that the victim "had to be stopped," and that he "couldn't stand" the victim. *See id*. at 195-97.

is guilty of the lesser crime of manslaughter. In determining whether the evidence would support a manslaughter charge, we must view the evidence in the light most favorable to the defendant.

*Id*. at 1141 (internal citations omitted). Additionally, the admission or exclusion of evidence is "a matter committed to the sound discretion of the trial court," which this Court will not disturb absent an abuse of discretion. *Commonwealth v. Jackson*, 486 A.2d 431, 437 (Pa. Super. 1984). Lastly, only relevant competent evidence is admissible at trial. *See id*.

Reyes, citing *Commonwealth v. McCusker*, 292 A.2d 286 (Pa. 1972), argues that trial counsel was ineffective for failing to put forth a provocation defense and argue for a voluntary manslaughter jury instruction based on a "cumulative effect of a series of related events." *See* Reyes's Brief at 30.[4] Reyes further maintains that both trial and appellate counsel were ineffective for failing to present a federal constitutional due process argument, based on

_____

[4] In *McCusker*, our Supreme Court held that the trial court erred in precluding psychiatric evidence relevant to determining whether the defendant acted in the heat of passion when he murdered his wife. *See* 292 A.2d at 293. There, the provocation included the following:

> [McCusker's] awareness within the last month before the crime that his wife had entered into a meretricious relationship with his step-brother; his knowledge within minutes of the crime that his wife was perhaps pregnant with his step-brother's child; and his wife's **threat immediately before the crime** that she was going to leave defendant and take with her his only child.

*Id*. at 289-90 (emphasis added).

*Mullaney v. Wilbur*, 421 U.S. 684 (1975), that the Commonwealth was required to disprove that Reyes was acting in the heat of passion.[5] *See* Reyes's Brief at 31-37. Reyes maintains his expert witness, Dr. Tepper, a licensed psychologist would have testified that Reyes murdered his victim in the heat of passion. *See* Reyes's Brief at 34.

The PCRA court considered these issues and determined they lack merit. The PCRA court noted that both the trial court and this Court previously determined that the victim's actions did not rise to the level of constituting the requisite provocation to support a possible finding of voluntary manslaughter. *See* PCRA Court Opinion, 5/18/22, at 15 (citing *Commonwealth v. Reyes*, 161 A.3d 377 (Pa. Super. 2017) (unpublished memorandum at *2) and Trial Court Opinion, 10/23/15, at 16)). The PCRA court concluded that, because there was no evidence of record to support a provocation defense or to justify a voluntary manslaughter jury instruction, neither trial nor appellate counsel can be deemed ineffective. *See id*. at 15-18. Further, because neither trial nor appellate counsel were ineffective,

---

[5] In *Mullaney*, the U.S. Supreme Court held that federal due process "requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation *when the issue is properly presented in a homicide case*." 421 U.S. at 704 (emphasis added). Further, our Supreme Court and this Court have held that modifications in federal jurisprudence since *Mullaney* clarify that the prohibition is on requiring a defendant to negate an element of an offense or otherwise presuming guilt as to an element of an offense. *See*, *e.g.*, *Commonwealth v. Mouzon*, 53 A.3d 738, 742-43 (Pa. 2012); *Commonwealth v. Kolovich*, 170 A.3d 520, 528-29 (Pa. Super. 2017).

neither PCRA attorney could be ineffective for failing to raise prior counsels' ineffectiveness. *See id*. at 18-19.

Based on our review, we discern no basis to disturb the PCRA court's ruling. The factual basis of the case establishes that Reyes shot his victim not in response to a threat, but rather, as Reyes testified, "He said fuck your mother, not guilty, not guilty . . . just mocking me. And everything just turned black for me. Like something took over me. I forgot I had the gun on me. . .. I blanked out . . .. Yeah, that's when I shot him." *See* N.T., 1/8/15, at 156-57; *contra McCusker* (holding that expert testimony about heat of passion was improperly excluded where the trial court heard evidence that the victim *threatened* to leave her husband and take his only child just before he shot her). For these reasons, this Court has already concluded that the trial court did not err or abuse its discretion in determining that "there was no factual basis for a jury instruction on voluntary manslaughter," and, further, the trial court "properly excluded the proposed heat of passion expert testimony" for the same reason. *See Reyes*, 161 A.3d 377 (unpublished memorandum at *2); *contra Mullaney*, 421 U.S. at 704 (requiring the prosecution to prove absence of heat of passion *when the issue is properly presented*); *cf*. N.T., 1/9/15, at 50 (trial court informing the jury that "the Commonwealth . . . always has the burden of proving *each and every element of the crimes charged* and that the defendant is guilty . . . beyond a reasonable doubt. So

a person accused of a crime is not required to present evidence or to prove anything in his own defense") (emphasis added).[6]

For the foregoing reasons, neither trial nor appellate counsel may be deemed ineffective for the reasons Reyes advances. Accordingly, Reyes's first issue in which he levels layered claims of ineffectiveness against his PCRA attorneys merits no relief. *See McCready*, 295 A.3d at 299.

In his second issue, Reyes argues that the PCRA court denied him a "fundamentally fair" PCRA proceeding by *sua sponte* removing Attorney McMahon and then appointing Attorney Yacoubian without providing notice to Reyes. Reyes maintains that, following the removal of Attorney McMahon, Reyes had "an absolute right to either choose self-representation or retain new counsel and then move the PCRA court to file a supplemental PCRA petition to raise additional claims of trial counsel's ineffectiveness . . .." Reyes's Brief at 26. However, Reyes asserts he was unable to exercise this right because he was not served with an order pursuant to Pa.R.Crim.P. 122(B)(1) indicating the change in counsel. *See id*.

---

[6] To the extent that the PCRA court denied relief because it concluded Reyes's voluntary manslaughter issues were previously litigated within the meaning of the PCRA, specifically, section 9544(a)(2), it erred, because the claim of ineffectiveness is distinct from the underlying substantive legal issue. *Compare* PCRA Court Opinion, 5/18/22, at 16-17 *with*, *e.g.*, *Commonwealth v. Spotz*, 18 A.3d 244, 262 n.8 (Pa. 2011). However, as noted above, we may affirm a valid order for any reason appearing as of record. *See Wholaver*, 177 A.3d at 145.

The PCRA court concluded this issue merits no relief. The court noted that at a **Grazier** hearing in August 2019, Reyes informed the court that he had not wanted Attorney McMahon to represent him. **See** PCRA Court Opinion, 5/18/22, at 22. Additionally, because Reyes had a rule-based right to counsel for his first PCRA petition, the court appointed Attorney Yacoubian to "protect [Reyes's] due process rights. The mere fact that Attorney Yacoubian filed a [**Turner**/]**Finley** letter" does not change this fact. **Id**.

Following our review, we discern no error in the PCRA court's conclusion. We note that while Reyes argues that the PCRA court's "drastic action of removing retained counsel and appointing new counsel without a hearing or providing notice . . . denied [Reyes] due process and fundamental fairness and was essentially tantamount to [him] having no counsel to assist him," **see** Reyes's Brief at 26, Reyes has consistently maintained that he does not want counsel to represent him in relation to his PCRA petition: In August 2019, Reyes indicated to the PCRA court that while his family retained Attorney McMahon, "I had told them that I did not want [Attorney] McMahon." **See** N.T., 8/13/19, at 9-11. Additionally, following Attorney McMahon's removal and Attorney Yacoubian's appointment and subsequent no-merit letter, Reyes responded with assertions of layered ineffectiveness claims and repeatedly sought to proceed *pro se*. **See**, **e.g.**, Motion to Proceed *Pro Se*, 5/21/19; Rule 907 Response, 3/9/21, at 8 (moving for leave to file a *pro se* amended PCRA petition rather than appointment of new PCRA counsel and asserting layered

claims of ineffectiveness); Motion to Proceed *Pro Se*, 1/14/22 (seeking a **Grazier** hearing in order to proceed *pro se*); Application, 3/30/22, at ¶ 7 (Reyes stating that he had "not made any request since the August [] 2019 **Grazier** hearing for the appointment of counsel"); Short Certificate, 4/8/22 (PCRA court noting that it had held a **Grazier** hearing and that Reyes was permitted to proceed *pro se*); Petition, No. 985 EDA 2021, 6/27/22 (Reyes requesting this Court to order the PCRA court to enter an order correcting the docket to reflect that Reyes is proceeding *pro se*). In sum: Reyes had never wanted Attorney McMahon to represent him; to safeguard Reyes's rights following Attorney McMahon's repeated failure to appear for court, the PCRA court appointed Attorney Yacoubian. Following Attorney Yacoubian's no-merit letter, Reyes has repeatedly asserted his desire to proceed *pro se*. The PCRA court held at least two **Grazier** hearings on the matter; and Reyes, even now, seeks to proceed *pro se* so as to present his five assertions of ineffectiveness against trial and appellate counsel. **Contra** Reyes's Brief at 26 (citing **Commonwealth v. Sangricco**, 415 A.2d 65, 67 (Pa. 1980) (vacating an order dismissing an uncounseled petition for post-conviction relief where appointed counsel repeatedly failed to take action to amend the petition, and though the petitioner requested new counsel, the post-conviction court did not grant the request)). For these reasons, Reyes's asserted due process violations are meritless.

Lastly, in his third issue, Reyes argues the PCRA court abused its discretion by denying his request to file an amended/supplemental PCRA petition pursuant to Pa.R.Crim.P. 905(A). Pennsylvania Rule of Criminal Procedure 905(A) permits a PCRA court to grant leave for a petitioner to amend or withdraw a PCRA petition at any time, and that amendment "shall be freely allowed to achieve substantial justice." *See Commonwealth v. Boyd*, 835 A.2d 812, 816 (Pa. Super. 2003). A PCRA court has "substantial latitude" in deciding whether to permit the amendment of a petition. *Id*. Where a PCRA court denies a motion to file an amended petition, but considers another pleading containing issues not included in the prior petition, the PCRA court has "effectively allowed [the petitioner] to amend his petition to include those issues . . .." *Id*.

Reyes maintains the PCRA court should have permitted him to raise his claims of ineffectiveness against trial and appellate counsel because he had not had an opportunity to "raise and develop" the claims in his previously pending petition. *See* Reyes's Brief at 38. Reyes asserts that he could more thoroughly present his claims in a *pro se* petition rather than a Rule 907 response. *See id*. For that reason, the PCRA court abused its discretion in denying his motion to file an amended petition *pro se*.

The PCRA court concluded this issue merits no relief. The court explained that it "reviewed the five additional issues [Reyes] sought to raise prior to dismissing [his] PCRA [p]etition." PCRA Court Opinion, 5/18/22, at 8.

The court indicated that it analyzed these issues "in order to give [Reyes] all proper considerations regarding his . . . petition." **Id**.

Based on our review, we conclude the PCRA court did not abuse its discretion by denying Reyes's motion to file an amended petition. Reyes maintains the PCRA court erred in denying him leave to file an amended petition, **see** Reyes's Brief at 36-37; however, by considering the substantive merits of Reyes's issues as presented in his Rule 907 response, the PCRA court "effectively allowed [him] to amend his petition to include those issues," and, thereby, acted "within its discretion and . . . in furtherance of achieving substantial justice" in compliance with the rule. **Boyd**, 835 A.2d at 816. Reyes has failed to show how his claims would be any more meritorious if raised in an amended *pro se* petition rather than his Rule 907 response. Accordingly, Reyes is due no relief.

In sum, because none of Reyes's issues merit relief, we affirm the PCRA court's order dismissing Reyes's petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  12/20/2023